[Cite as *State v. Russell*, **2025-Ohio-5311.**]

COURT OF APPEALS
DELAWARE COUNTY, OHIO
FIFTH APPELLATE DISTRICT

| | |
|---|---|
| STATE OF OHIO, | Case No. 25 CAA 02 0019 |
| Plaintiff - Appellee | Opinion And Judgment Entry |
| -vs- | Appeal from the Delaware County Court of Common Pleas, Case No. 24 CR I 03 0317 |
| BENJAMIN J. RUSSELL, | Judgment:   Affirmed |
| Defendant - Appellant | Date of Judgment Entry: November 24, 2025 |

**BEFORE:** Craig R. Baldwin; William B. Hoffman; Robert G. Montgomery, Judges

**APPEARANCES:** MELISSA A. SCHIFFEL, Prosecuting Attorney, KATHERYN L. MUNGER, Assistant Prosecuting Attorney, for Plaintiff-Appellee; WILLIAM T. CRAMER, for Defendant-Appellant.

*Baldwin, P.J.*

{¶1}   The appellant, Benjamin Russell, appeals his conviction on one count of domestic violence following a jury trial. Appellee is the State of Ohio. For the reasons that follow, we affirm the decision of the trial court.

**STATEMENT OF FACTS AND THE CASE**

{¶2}   The appellant was charged on or about June 3, 2024, with domestic violence arising from an incident that occurred on June 2, 2024. He was indicted on June 13, 2024, on one count of domestic violence in violation of R.C. 2919.25(A) and (D)(4), a felony of the third degree. The appellant pleaded not guilty.

**{¶3}** The matter proceeded to a jury trial on February 11 and 12, 2025. Prior to voir dire, the trial court addressed a Motion in Limine that had been filed by the appellant on February 10, 2025, in which the appellant argued that out of court statements made by the victim, R.H., should be excluded because their admission violated the Confrontation Clause and constituted hearsay. The appellant's Motion in Limine did not address out of court statements made by the 911 caller, who was the appellant's brother. The trial court, after hearing the arguments presented by both parties and watching the law enforcement officers' bodycam footage, determined that the statements were admissible, stating:

> THE COURT: I don't. There are a number of exceptions under hearsay. When the medics come, there are statements for the purpose of medical diagnosis and treatment.
>
> Prior to that, she is crying, emotional. It's pretty plain, so it's certainly excited utterance. I think, when she's describing her injuries, I think it is existing physical condition; hearsay. It's not testimonial. It's not - - she's not making those statements for the purpose of a criminal investigation.
>
> I think there's even an emergent situation and she's, frankly, even reluctant to make statements. I mean, she does not want to identify herself or answer questions and so that's, in my mind, clearly not an intention to create evidence for - - it's actually the opposite; she's trying not to create evidence, or at least that's the effect.[1]

---

[1] The trial court did, however, exclude a portion of the bodycam footage in which the officer stated "you are the victim of a crime" when he first began speaking with R.H.

The matter proceeded to trial, during which the following evidence was presented.

{¶4}   On June 2, 2024, at or around 5:00 a.m., Sergeant Thomas Donoghue of the Delaware City Police Department responded to a call regarding "a fight with people bleeding." The location was a house that had been divided into apartments, with a small parking area in the back. Officer Gregory Bates arrived around the same time as Sergeant Donoghue. The officers met with the 911 caller, who was the appellant's brother. The apartment at issue was at the back of the house on the second floor.

{¶5}   The appellant objected during trial to the admission of the recording of the 911 call and the statements made by his brother, which the appellant argued were hearsay. However, the trial court determined that the present sense impression exception to the hearsay rule applied, and allowed their admission. A recording of the 911 call was played for the jury. During the call, the appellant's brother told the operator that they needed a squad at the apartment, that the appellant and his girlfriend were fighting, that the fight was physical and there was blood, they both had injuries, and that officers needed to get over there because they were going to hurt each other. Near the end of the 911 call, the appellant's brother stated that the appellant had a spinal injury, but just got up and started "smacking the shit out of her and everything else."

{¶6}   Sergeant Donoghue testified that the appellant's brother told Donoghue that he was renting one of the apartments, and that R.H. was the appellant's girlfriend. The appellant's brother described what he saw for the officers at the scene, and Sergeant Donoghue testified that it was consistent with what R.H. subsequently said while being treated by paramedics.

{¶7} Sergeant Donoghue noticed a vehicle parked behind the house at an odd angle; he shined his flashlight into the vehicle and saw R.H., who appeared to be crying and upset, in the back seat. Sergeant Donoghue had her crack the door so they could talk. R.H. had a cut above her eye that was bleeding heavily down her face which she was trying to clean. She also had blood in her mouth and some type of an injury to her arm. R.H. was reluctant to say what had happened. However, she eventually spoke with the paramedics as they tended to her injuries, and told them how she was injured, including that she was struck by a fist. As R.H. was being placed on a gurney to be loaded into the ambulance, she stated: "I did nothing to him. Damn monster hit me with a frickin walker." R.H.'s interactions with paramedics were captured on Donoghue's body camera, the video of which was played for the jury.

{¶8} Officer Bates testified that the appellant's brother told the officers that the appellant had a spinal cord injury, but nonetheless stood up to assault R.H. Officer Bates' body camera video was played for the jury, during which the appellant's brother can be heard saying that the appellant had a spinal cord injury "but somehow he got up and beat the shit out of this girl." The appellant's brother was also heard on the video stating that he witnessed the appellant hit R.H.

{¶9} After another officer arrived to assist, Officer Bates and the other officer entered the apartment and found the appellant lying on a bed at the back of the apartment. A walker was on the floor just outside the bedroom. The appellant said he was in bed and could not move, stating that he had a broken back, neck, spine, and hips; that he had to be carried upstairs; and, that his medical paperwork was in a bag in the front room. The appellant's knuckle appeared to have blood on it.

**{¶10}** Based upon the information provided by the appellant's brother, and the statements made by R.H. to paramedics, Officer Bates placed the appellant under arrest. The appellant appeared to have some serious medical issues, so paramedics were called to assist. The appellant was noncompliant with the paramedics, and they eventually had to ask officers to handcuff the appellant so they could transport him to the hospital.

**{¶11}** Tyler McCoy, an Intensive Supervision Officer with Delaware County Adult Probation, testified that he had been supervising the appellant since August of 2023. McCoy testified that he had conversations with the appellant, and learned that the appellant was living with someone. During a home visit in October of 2023, a woman was present whom the appellant introduced to McCoy as his girlfriend. In November of 2023, the appellant told McCoy that his girlfriend had moved in with him. Finally, McCoy testified that in February of 2024 he saw the appellant with his girlfriend walking down an alley and stopped them for a conversation. McCoy identified R.H. as the appellant's girlfriend.

**{¶12}** Forensic nurse Jennifer Coffindaffer testified that she spoke with R.H. at the hospital regarding her injuries, noting that R.H. was tearful, upset, anxious about what was happening, and just wanted to go back home to Chicago. R.H told Coffindaffer that the appellant walked over to her and would not let her get her purse; he hit her with his fists when she walked to the living room, and hit her with his walker. Coffindaffer identified some of R.H.'s injuries, including the bruising around her eye; abrasions down her face; redness in her hairline; redness and bruising to her lip; bruises and abrasions on her arms; and, a broken fingernail and blood on a finger. Coffindaffer testified that R.H. was able to relate the injuries to specific actions by the appellant; for example, that the

appellant hit R.H.'s left arm with the walker. R.H. did not have a safe place to go upon discharge from the hospital, and wanted to go back to Chicago where she had family.

{¶13} The parties stipulated that the appellant had two prior convictions, one for domestic battery in Cook County, Illinois, which is substantially similar to domestic violence in Ohio; and, a second for aggravated assault against a household or family member in Delaware County, Ohio.

{¶14} The jury found the appellant guilty as charged, and the trial court set the matter for sentencing. At the sentencing hearing, the trial court addressed unrelated community control violations in case number 23CRI060342, terminated community control, and imposed the reserved sentence of 18 months on that case. In the instant case, the court imposed a consecutive prison term of 36 months, with a mandatory term of post release control of one to three years. The court imposed costs, but not fines. All of the appellant's jail credits were applied to the community control violation.

{¶15} The appellant filed a timely appeal in which he sets forth the following three assignments of error:

{¶16} "I. APPELLANT'S CONFRONTATION RIGHTS UNDER THE STATE AND FEDERAL CONSTITUTIONS WERE VIOLATED BY THE ADMISSION OF TESTIMONIAL HEARSAY FROM THE ONLY TWO EYEWITNESSES."

{¶17} "II. THE TRIAL COURT ABUSED ITS DISCRETION IN ADMITTING HEARSAY EVIDENCE FROM THE ONLY TWO EYEWITNESSES, NEITHER OF WHOM WAS CALLED TO TESTIFY ON BEHALF OF THE PROSECUTION."

{¶18} "III. THE AGGREGATE IMPACT OF ADMITTING ALL THE ACCUSATIONS VIA HEARSAY WAS TO DEPRIVE APPELLANT OF A FAIR TRIAL IN

VIOLATION OF HIS STATE AND FEDERAL CONSTITUTIONAL RIGHTS TO DUE PROCESS, AND TO CAUSE UNFAIR PREJUDICE IN VIOLATION OF EVID.R. 403(A)."

## ASSIGNMENT OF ERROR NO. I

{¶19} The appellant argues in his first assignment of error that the trial court's decision to allow the admission of statements made by R.H. and his brother, the 911 caller, violated his right to confront witnesses against him. We disagree.

### *Standard Of Review*

{¶20} The Ohio Supreme Court discussed the standard of review of an alleged Confrontation Clause violation, the Confrontation Clause, hearsay, and the admissibility of a victim's statements through bodycam footage in *State v. Smith,* 2024-Ohio-5745:

> We consider whether the admission at Smith's criminal trial of B.B.'s statements made to the EMTs and to Officer Soucek as captured on Officer Soucek's body-camera video violated Smith's rights under the Confrontation Clause of the Sixth Amendment to the United States Constitution. We review this question of law de novo. *See State v. McKelton*, 148 Ohio St.3d 261, 2016-Ohio-5735, 70 N.E.3d 508, ¶ 172.

### *Analysis*

{¶21} In *Smith,* the victim of domestic violence spoke with both law enforcement officers and EMTs. The Court stated:

> The Sixth Amendment provides that "[i]n all criminal prosecutions, the accused shall enjoy the right ... to be confronted with the witnesses against him." In *Crawford v. Washington*, 541 U.S. 36, 124 S.Ct. 1354, 158 L.Ed.2d 177 (2004), the United States Supreme Court explained that the

key question for determining whether a Confrontation Clause violation has occurred is whether an out-of-court statement is "testimonial." *Id.* at 59, 68, 124 S.Ct. 1354. If a statement is testimonial, its admission into evidence will violate the defendant's right to confrontation if the defendant does not have an opportunity to cross-examine the declarant. *Id*. at 53-56, 124 S.Ct. 1354.

To determine whether a statement is testimonial, courts must look to post-*Crawford* decisions to ascertain whether the statement bears indicia of certain factors that would make it testimonial. "Statements are nontestimonial when made in the course of police interrogation under circumstances objectively indicating that the primary purpose of the interrogation is to enable police assistance to meet an ongoing emergency." *Davis v. Washington*, 547 U.S. 813, 822, 126 S.Ct. 2266, 165 L.Ed.2d 224 (2006). Statements are "testimonial when the circumstances objectively indicate that there is no such ongoing emergency, and that the primary purpose of the interrogation is to establish or prove past events potentially relevant to later criminal prosecution." *Id*. The primary purpose of a testimonial statement is to create an out-of-court substitute for trial testimony. *Ohio v. Clark*, 576 U.S. 237, 245, 135 S.Ct. 2173, 192 L.Ed.2d 306 (2015). That primary purpose must be measured objectively by the trial court, accounting for the perspectives of the interrogator and the declarant. *Michigan v. Bryant*, 562 U.S. 344, 367-368, 131 S.Ct. 1143, 179 L.Ed.2d 93 (2011).

*Id.* at ¶32-34. The *Smith* Court found that the victim's statements made to EMTs were not testimonial in nature, but rather, were made for the purpose of receiving medical treatment, and therefore were admissible. So, too, were R.H.'s statements herein made to paramedics who were treating her for her injuries. The bodycam footage clearly shows R.H. responding to questions from the paramedics who were treating her for her injuries, and not to questions from law enforcement officers. Her interactions with paramedics were simply caught on the officer's bodycam. R.H.'s statements were not testimonial, and therefore their admission did not violate the Confrontation Clause.

{¶22} The appellant argued in his Motion in Limine that the Confrontation Clause precluded the admissibility of statements made by R.H.; he did not argue in his Motion that the Confrontation Clause precluded statements made by his brother. Instead, the appellant objected to the admissibility of his brother's statements during trial on hearsay grounds. Thus, the appellant has waived all but plain error with regard to whether the Confrontation Clause applied to preclude the admission of statements made by his brother.

{¶23} Plain error was defined by the Ohio Supreme Court as follows:

. . . Plain error is an obvious defect in the trial proceeding that affects substantial rights. *State v. Barnes*, 94 Ohio St.3d 21, 27, 759 N.E.2d 1240 (2002). The alleged error must have "substantially affected the outcome of the trial," *Slagle* at 605, 605 N.E.2d 916, such that "but for the error, the outcome of the trial clearly would have been otherwise," *State v. Long*, 53 Ohio St.2d 91, 372 N.E.2d 804 (1978) paragraph two of the syllabus; accord

*State v. Jackson*, 141 Ohio St.3d 171, 2014-Ohio-3707, 23 N.E.3d 1023, ¶ 137.

*State v. Cepec*, 2016-Ohio-8076, ¶ 67. The statements made by the appellant's brother were not testimonial, and therefore not subject to the confrontation clause, as they were made for the primary purpose of enabling responding law enforcement officers to meet an ongoing emergency. Further, there is no evidence that exclusion of the brother's statements would have substantially affected the outcome of the trial, nor that, but for the alleged error, the outcome of the trial would have been otherwise, particularly in light of the admission of statements made by R.H. to the paramedics.

{¶24} The court in *State v. Jackson*, 2023-Ohio-2193 (3rd Dist.), *motion for delayed appeal granted*, 2023-Ohio-4200, and *appeal not allowed*, 2024-Ohio-555, addressed a similar Confrontation Clause issue, stating:

Similar to his hearsay challenge, Jackson failed to raise the Confrontation Clause issue before the trial court. As a result, he waived all but plain error on appeal. Nevertheless, based on our review of the record, we conclude that it was not error, let alone plain error, for the trial court to admit Snyder's out-of-court statements even though Snyder did not testify at trial. Importantly, Jackson failed to demonstrate that the primary purpose of any of Snyder's statements made to law enforcement to which he objects was to create an out-of-court substitute for trial testimony. Likewise, Jackson failed to demonstrate Snyder would have reasonably believed that his statements to Nees would be available for later use at trial.

In this case, we conclude that Snyder's statements to law enforcement—including Snyder's statements to the bystander and to his sister that were conveyed to law enforcement—are nontestimonial under the primary-purpose test. Decisively, those statements are nontestimonial because they were made during an ongoing emergency. Indeed, "[s]tatements to police officers responding to an emergency situation are generally considered nontestimonial precisely because the declarant is usually acting—under great emotional duress—to secure protection or medical care." Beasley, 153 Ohio St.3d 497, 2018-Ohio-493, 108 N.E.3d 1028, at ¶ 183. Critically, "[a]n ongoing emergency does not necessarily end when the police arrive." Little at ¶ 18.

*Id.* at ¶¶ 58-59. In this case the brother's statements - that a squad was needed at the apartment, that the appellant and his girlfriend [R.H.] were fighting, that the fight was physical and there was blood, they both had injuries, and that officers needed to get over there because they were going to hurt each other - were made to the 911 operator to get help during an emergency situation, and his statements to law enforcement officers on scene were made during the ongoing emergency. The admission of said statements was not error, let alone plain error.

{¶25} Based upon the above, we find the appellant's assignment of error number one to be without merit, and overrule the same.

## ASSIGNMENT OF ERROR NO. II

{¶26} The appellant submits in his second assignment of error that the trial court abused its discretion when it allowed the admission of statements made by R.H. and the

appellant's brother, who was the 911 caller, arguing that said statements constituted inadmissible hearsay. We disagree.

### Standard Of Review

**{¶27}** **"**Ordinarily, a trial court is vested with broad discretion in determining the admissibility of evidence in any particular case, so long as such discretion is exercised in line with the rules of procedure and evidence." *Rigby v. Lake County*, 58 Ohio St.3d 269, 271 (1991). The appellate court must limit its review of the trial court's admission or exclusion of evidence to whether the trial court abused its discretion. *Id.* The abuse of discretion standard is more than an error of judgment; it implies the court ruled arbitrarily, unreasonably, or unconscionably. *Blakemore v. Blakemore*, 5 Ohio St.3d 217, 219 (1983).

### Analysis

**{¶28}** "'Hearsay' is a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted in the statement." Evid.R. 801(C). Hearsay is inadmissible unless it falls under an exception to the rule. Evid.R. 802.

**{¶29}** Evid.R. 803 addresses exceptions to the hearsay rule, and provides in pertinent part:

> The following are not excluded by the hearsay rule, even though the declarant is available as a witness:
>
> **(1)** **Present Sense Impression.** A statement describing or explaining an event or condition made while the declarant was perceiving the event or

condition, or immediately thereafter unless circumstances indicate lack of trustworthiness.

**(2) Excited Utterance.** A statement relating to a startling event or condition made while the declarant was under the stress of excitement caused by the event or condition.

**(3) Then Existing, Mental, Emotional, or Physical Condition.** A statement of the declarant's then existing state of mind, emotion, sensation, or physical condition (such as intent, plan, motive, design, mental feeling, pain, and bodily health), but not including a statement of memory or belief to prove the fact remembered or believed unless it relates to the execution, revocation, identification, or terms of declarant's will.

**(4) Statements for Purposes of Medical Diagnosis or Treatment.** Statements made for purposes of medical diagnosis or treatment and describing medical history, or past or present symptoms, pain, or sensations, or the inception or general character of the cause or external source thereof insofar as reasonably pertinent to diagnosis or treatment.

The bodycam footage of R.H.'s statements regarding her injuries and how she got them establishes that she was responding to questions from paramedics regarding her injuries. Her statements to paramedics, in which she described her symptoms, pain, and sensations, were made for the purposes of medical diagnosis and treatment. The trial court did not err when it found that the statements made by R.H. were not precluded by the hearsay rule.

**{¶30}** In addition, the trial court correctly found that the excited utterance exception to the hearsay rule applied to statements made by R.H. As set forth by the court in *State v. Scarl*, 2003-Ohio-3493 (11th Dist.):

> When deciding whether a statement qualifies as an excited utterance, a court should consider the following: "(a) the lapse of time between the event and the declaration; (b) the mental and physical condition of the declarant; (c) the nature of the statement; and (d) the influence of intervening circumstances." *Shelton* at ¶ 25. See, also, *State v. Humphries* (1992), 79 Ohio App.3d 589, 598, 607 N.E.2d 921. That being said, the timing of the statement is not the controlling factor. *State v. Ashford* (Feb. 16, 2001), 11th Dist. No. 99–T–0015, 2001 WL 137595, at 5. See, also, *Taylor* at 303, 612 N.E.2d 316 (observing that "the passage of time between the statement and the event is relevant but not dispositive of the question"). Rather, "[t]he central requirements are that the statement must be made while the declarant is still under the stress of the event and the statement may *not* be a result of reflective thought." (Emphasis sic.) *Taylor* at 303, 612 N.E.2d 316.

> Moreover, declarations given in response to questioning can be admissible as excited utterances provided that certain safe guards are met. Stated differently, "[t]he admission of a declaration as an excited utterance is not precluded by questioning which: (1) is neither coercive nor leading, (2) facilitates the declarant's expression of what is already the natural focus of the declarant's thoughts, and (3) does not destroy the domination of the

nervous excitement over the declarant's reflective faculties." *State v. Wallace* (1988), 37 Ohio St.3d 87, 524 N.E.2d 466, paragraph two of the syllabus. See, also, *State v. Patterson* (May 22, 1998), 11th Dist. No. 96–T–5439, 1998 WL 310737, at 11.

*Id.* at ¶¶ 59-60. R.H. was sitting in the back seat of a parked car at the rear of the residence, having run outside in the dark in the rain in her socks to get away from the appellant's violent actions. The lapse of time between her injuries and when officers found her in the back seat was minimal. When officers found her, she was bleeding, in pain, and scared. Her statements to law enforcement officers were minimal, as she appeared hesitant to speak with them. Her statements regarding the injuries she sustained, and how, were made to paramedics. There is no evidence that any intervening circumstances influenced R.H.'s statements, nor were any of the officer's questions coercive or misleading. R.H.'s nervous excitement regarding the events leading up to her injuries was not extinguished by the officer's questions. Indeed, her focus was on answering the questions from paramedics, which was captured on the officers' bodycam. Even if the medical treatment exception did not apply, which it does, the statements made by R.H. also constitute excited utterances and, therefore, are not precluded from admission by the hearsay rule.

**{¶31}** Furthermore, the statements made by the appellant's brother were also properly admitted. The trial court relied on the present sense impression exception to the hearsay rule, which provides that a statement describing or explaining an event or condition made while the declarant was perceiving the event or condition, or immediately thereafter unless circumstances indicate lack of trustworthiness, is not excluded by the

hearsay rule regardless of the declarant's availability. Evid.R. 803(1). The appellant's brother made statements to the 911 operator regarding an emergency requiring police and EMT response; and, to responding officers whose primary purpose was to enable law enforcement to assist in what was, at that time, an ongoing emergency. As such, the statements were not inadmissible hearsay, and the trial court correctly found them to be admissible.

{¶32} Accordingly, we find the appellant's assignment of error number two to be without merit, and overrule the same.

## ASSIGNMENT OF ERROR NO. III

{¶33} The appellant argues in his third assignment of error that the "aggregate impact of admitting all the accusations via hearsay was to deprive appellant of a fair trial in violation of his State and Federal Constitutional rights to due process, and to cause unfair prejudice in violation of Evid.R. 403(a)." We disagree.

{¶34} The appellant argues in his final assignment of error that he was denied a fair trial due to the aggregate number of errors committed by the trial court. Aggregate, or cumulative error was discussed by the Ohio Supreme Court in *State v. Powell*, 2012-Ohio-2577:

> *State v. DeMarco,* 31 Ohio St.3d 191, 509 N.E.2d 1256 (1987), paragraph two of the syllabus, recognized the doctrine of cumulative error. Under this doctrine, a conviction will be reversed when the cumulative effect of errors in a trial deprives a defendant of a fair trial even though each of the numerous instances of trial-court error does not individually constitute cause for reversal. *Id*. at 196–197, 509 N.E.2d 1256. *See also State v.*

*Hunter,* 131 Ohio St.3d 67, 2011-Ohio-6524, 960 N.E.2d 955, ¶ 132; *Garner,* 74 Ohio St.3d at 64, 656 N.E.2d 623.

> The doctrine of cumulative error is not applicable in the present case. Powell received a fair trial. Moreover, none of the errors committed in this case, when considered either individually or cumulatively, resulted in prejudicial error. As previously discussed in other propositions of law, overwhelming evidence was introduced that established Powell's guilt. Thus, we reject proposition XXIII.

*Id.* at ¶¶ 223-224. The appellant argues that the aggregate impact of "admitting all the accusations via hearsay" deprived him of a fair trial. However, the alleged cumulative errors are those raised in appellant's assignments of error numbers one and two. Having found the appellant's contentions to be without merit in each addressed error, we similarly conclude that their cumulative effect did not deny the appellant a fair trial. Accordingly, we find the appellant's third assignment of error to be without merit.

## CONCLUSION

{¶35} Based upon the foregoing, we find appellant's assignments of error numbers one, two, and three to be without merit, and they are therefore overruled. The decision of the Delaware County Court of Common Pleas is hereby affirmed.

**{¶36}** Costs to appellant.

By: Baldwin, P.J.

Hoffman, J. and

Montgomery, J. concur.